```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/29/08
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

CARLOS BUSTAMANTE,

        Plaintiff,

- against -                                                          07 Civ. 6226 (CM)

MICHAEL CHERTOFF, Secretary, US
Department of Homeland Security; Dr. EMILIO
T. GONZALES, Director, US Citizenship and
Immigration Services; ANDREA QUARANTILLO,
District Director, New York District, USCIS; and,
MARK J. MERSHON, Assistant Director in
Charge, Federal Bureau of Investigation.

        Defendants.

----------------------------------------------------------x

### DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

McMahon, J:

This case presents an issue of first impression in the Second Circuit.

On July 5, 2007, Plaintiff Carlos Bustamante commenced this action against Defendants

pursuant to 8 U.S.C. § 1447(b) (2006), asking this court to grant a hearing on the merits of his

application for naturalization or, in the alternative, to remand the case to the United States

Bureau of Citizenship and Immigration Services (CIS)[1] with instructions to grant the application.

While this action was pending, CIS denied Bustamante's application. Defendants have moved to

dismiss Bustamante's complaint as moot. This issue is whether CIS had the power to act once

Bustamante brought suit in this court.

---

[1] Older statutes and many cases refer to this agency as INS, its pre-Homeland Security
incarnation. For the sake of consistency I refer to it as CIS throughout.

1

I conclude that CIS did have the power to act. Therefore, Defendant's motion to dismiss is **GRANTED**.

## Background

Facts

Carlos Bustamante filed an application for naturalization as a US citizen on October 16, 2006. His initial examination took place on February 1, 2007. Compl. ¶¶ 15, 16. 120 days and more passed, and the agency took no action on his application. On July 5, 2007, Bustamante filed his complaint pursuant to § 1447(b). He asked this court to adjudicate his naturalization application, or in the alternative to remand the matter to CIS with instructions to grant the application. Id. ¶ 1.

On August 24, 2007 – six weeks after suit was filed – CIS issued a decision denying Bustamante's application. It cited his prior conviction for manslaughter to support the determination that Bustamante lacked the good moral character required by 8 C.F.R. § 316.10 (2008). Defs.' Ex. A. The defendants then filed the present motion to dismiss Bustamante's § 1447(b) complaint as moot. Bustamante opposes the motion, taking the position that filing of the action divested CIS of the power to rule on his petition.

For reasons that have not been explained, Bustamante did not taken an administrative appeal from the August 24 decision, and his time to do so has expired. Therefore, if the filing of this action did not divest the agency of jurisdiction, Bustamante has forfeited his right to review.

2

Statutory Framework

Section 1447(b) – the law under which plaintiff filed this lawsuit – is part of the broad statutory scheme enacted by Congress to expedite the naturalization process. See Immigration Act of 1990, 104 Stat. 4978 (Nov. 29, 1990).

A permanent resident who has resided in the US for more than 5 years initiates the naturalization process by filing an application with the attorney general. 8 U.S.C. § 1445. CIS thereupon conducts an investigation and examination of the applicant. 8 U.S.C. § 1446.

If CIS denies the application for naturalization, the applicant can request a review hearing before an immigration officer. 8 U.S.C. § 1447(a). If the agency's decision is affirmed, the applicant can then seek de novo judicial review in the district court for the district of her residence. 8 U.S.C. § 1421(c).

The statute does not specifically direct CIS to act on an application within any period of time. However, if it does not act within 120 days of the initial examination, § 1447(b) provides the applicant with an alternative route to a district court:

> the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b). Significantly, under this section, the district court is not required to adjudicate the application. It can either determine the matter on the merits or remand it to the agency, with or without instructions as the court deems appropriate.

## Discussion

The defendants argue that, when CIS denied Bustamante's application, his suit

commenced under § 1447(b) became moot. Def. Mem. at 6-7.  If CIS had concurrent jurisdiction

over Bustamante's petition while this action was pending, then Defendants are correct.[2]  But

Bustamante argues that CIS was powerless to deny his application, because the commencement

of his § 1447(b) action vested this court with exclusive jurisdiction over his naturalization

application. Pl.'s Reply at 4-8.  Thus, the only issue is whether § 1447(b) vests this court with

exclusive or concurrent jurisdiction.

The Second Circuit has not addressed this question.  There is disagreement among the

district courts, see generally U.S. Citizenship and Naturalization Handbook § 10:6

(acknowledging disagreement among district courts, but stating that majority find exclusive

jurisdiction), and only two Circuits courts have spoken on this issue: the Fourth and the Ninth.[3]

In United States v. Hovsepian, the Ninth Circuit, sitting *en banc*, unanimously held that §

1447(b) vested exclusive jurisdiction over a naturalization petition in the district court. 359 F.3d

1144 (9th Cir. 2004) (reversing United States v. Hovsepian, 307 F.3d 922 (9th Cir. 2002)).

In Etape v. Chertoff, 497 F.3d 379 (4th Cir. 2007), a divided panel of the Fourth Circuit reached

the same result. Both courts relied on what they described as the plain language of the statute

and their understanding of how best to effectuate Congress' intent in passing the statute.

District  court cases supporting exclusive jurisdiction include Izraileva v. Chertoff, 2007

WL 3120255, at *2 (M.D. Fla. Oct. 23, 2007) (holding that § 1447(b) vests exclusive jurisdiction

in district court), Frenkel v. U.S. Dept. of Homeland Sec., 2007 WL 3090656, at *4 (D. Conn.

---

[2] While plaintiff disputes this in his Reply Brief, he cites no law for his disagreement.  Further,
the adjudicated cases take this proposition for granted.  See citations infra.
[3] I conjecture that the reason for this paucity of appellate authority is that § 1447(b) actions rarely
are adjudicated on their merits, for reasons that will be discussed below.

Oct. 19, 2007) (same), Dimopoulos v. Blakeway, 2007 WL 922224, at *4 (S.D. Tex. Mar. 23,

2007), Kalla v. Chertoff, 2007 WL 415157, at *2 (N.D. Ga. Feb. 6, 2007) (same), Meyersiek v.

U.S. Citizenship & Immigration Servs., 2006 WL 1582397, at *2 (D.R.I. Jun. 6, 2006) (same),

Meraz v. Comfort, 2006 WL 861859, at *3 (N.D. Ill. Mar. 9, 2006) (same), Zaranska v. U.S.

Dep't of Homeland Sec., 400 F. Supp. 2d 500 (E.D.N.Y. 2005) (same), and Castracani v.

Chertoff, 377 F.Supp.2d 71 (D.D.C. 2005) (same).

Cases finding concurrent jurisdiction include Al-Saleh v. Gonzales, 2007 WL 990145, at

*2 (D. Utah Mar. 29, 2007) (holding that § 1447(b) confers concurrent jurisdiction on the district

court and CIS), Perry v. Gonzales, 472 F. Supp. 2d 623 (D.N.J. 2007) (same), Farah v. Gonzales,

2006 WL 1116526, at *2 (D. Minn. Apr. 26, 2006) (same).

The trend toward exclusive jurisdiction has become more pronounced as certain leading

cases for concurrent jurisdiction have been undermined or reversed. For example, before the

Fourth Circuit decided Etape, both the lower court decision in that case, as well as an

unpublished Fourth Circuit decision, Kia v. I.N.S., 1999 WL 172818, *1 (4th Cir. 1999)

(unpublished table decision), came out in favor of concurrent jurisdiction. In Perry v. Gonzales,

an oft-cited example of the concurrent jurisdiction analysis, the court relied heavily on the

district court decision in Etape, which was later reversed. See Perry, 472 F. Supp. 2d 623, 628-

30 (D.N.J. 2007); see also Kurtis A. Kemper, Annotation, *Construction and Application of 8

U.S.C.A. § 1447 Governing Hearings on Denials of Applications for Naturalization*, 2006 A.L.R.

Fed. 2d 11 (2006) (collecting cases).

Nonetheless, because the district court decisions finding exclusive jurisdiction rely

almost exclusively on the reasoning of Hovsepian – which, as discussed below, this court finds

5

unpersuasive – I conclude that the filing of an action under § 1447(b) does not divest CIS of jurisdiction over a pending naturalization application.

### (1) The "plain language" of the statute is in fact ambiguous

As with any interpretative question, the text is the starting point. U.S. v. Reich, 479 F.3d 179, 187 (2d Cir. 2007) ("In interpreting a statute, '[w]e start, as always, with the language of the statute.'") (quoting Williams v. Taylor, 529 U.S. 420, 431 (2000)). If the plain language of § 1447(b) calls for exclusive jurisdiction, or is inconsistent with concurrent jurisdiction, I would be compelled to deny the motion to dismiss. But the language of the statute does not plainly divest the agency of jurisdiction once a lawsuit is filed.

In relevant part, § 1447(b) reads: "[The District] court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." The "matter," in this case, is the applicant's petition for naturalization.

The statutory language does not explicitly vest the district court with exclusive jurisdiction. Congress knows how to grant a court exclusive jurisdiction when it wants to. See, e.g., 5 U.S.C. § 8477 (2006) (granting district court "exclusive jurisdiction"); 6 U.S.C. § 442 (2006) (same); 7 U.S.C. § 25 (2000) (same); 7 U.S.C. § 2279 (2002); 11 U.S.C. § 524 (2005) (same); see also 10 U.S.C. § 950g (2006) (granting Court of Appeals for District of Columbia exclusive jurisdiction review military commission determinations). The absence of the use of the word "exclusive" in the phrase, "The district court shall have jurisdiction over the matter," leaves open the possibility that the agency retains concurrent jurisdiction over the "matter" during the pendency of a § 1447(b) action.

6

Plaintiff argues that the statute's use of the words "determine" and "remand" make it clear that Congress intended to strip CIS of jurisdiction. This argument persuaded the Fourth and Ninth Circuits. It does not persuade me.

Nothing in the fact that Congress gave a district court the power to "determine" the petition for naturalization (if it wished to do so) necessarily divests the agency of jurisdiction to do the same thing. Both the Ninth and the Fourth Circuits were concerned that agency action *pendente lite* would somehow compromise either the power of the district court to hear a case that the applicant wished to present to it. But it is quite clear that no decision made by CIS can keep a district court from ruling on a petition if an applicant wishes the court to do so.

In Hovsepian, 359 F.3d at 1160, the Ninth Circuit asked rhetorically, "How can the court 'determine the matter' if the [CIS] has the option to 'determine the matter,' too, and essentially force the court to accept its view?" The Etape majority phrased the same concern differently, worrying that, if jurisdiction were concurrent, an administrative agency would have the power to divest the court of jurisdiction, 497 F.3d at 383.

The short answer to the Ninth Circuit's question is that it is the agency, not the court, that risks losing its power to make a final determination on a naturalization petition under a concurrent jurisdiction scheme. Obviously, if both the court and the agency have jurisdiction, one or the other will reach the merits first. If the district court determines the petition before CIS acts, the agency will be "forced" to accept the court's conclusion, not vice versa. And if the agency acts first, and denies the petition, nothing (except a failure by petitioner to exhaust his administrative appellate remedies, which is not the agency's fault) can prevent an aggrieved applicant from going to the district court for final *de novo* review. The only situation in which the agency "forces the court to accept its view" arises when CIS grants the application. But

7

under the scheme set up by Congress, courts only become involved in the process when applications are denied; the agency has no statutory right to petition the district court for review So no court should be affronted if a § 1447(b) action is withdrawn.

Furthermore, as noted in the Etape dissent, as a technical matter it is not the agency that divests a district court of the ability to act on a § 1447(b) case. When a controversy becomes moot, "Nothing short of Article III, § 2 of the United States Constitution strips a district court of subject matter jurisdiction." Id. at 394 (Hamilton, J., dissenting)

Bustamante also argues that Congress' use of the word "remand" in § 1447(b) necessarily means that the filing of an action ousts the agency of jurisdiction, since if the agency had concurrent jurisdiction there would be no reason for the district court to "remand" the case to it.

"Remand" means "send back," Black's Law Dictionary (7th ed. 1999), and perhaps carries the implication that one cannot send something back without first taking it away entirely. However, the "remand" provision is not means inconsistent with keeping concurrent jurisdiction with the agency. Indeed, because of the peculiar statutory scheme set up by Congress, the word "remand" would not turn into "surplusage" if the agency remained vested with jurisdiction after an applicant commenced suit under § 1447(b).

The statute clearly indicates that the judge who receives such a case can elect to handle the matter in one of two ways. She can decide the petition on the merits. Or she can determine that CIS is a more appropriate forum for the matter in the first instance. If she makes the latter determination, Congress wanted the district court to be able to send a message to the tardy agency. Giving the court the option to "remand" when declining to exercise elective jurisdiction provides the court with a vehicle for sending appropriate instructions to the agency. Generally,

8

that will be an instruction to make a ruling within a specified period of time.[4] If the agency does

not comply with the instructions, it can be haled into court to explain why.

Contrary to the plaintiff's suggestion, I did not adopt Bustamante's position in an earlier

case. In Gizzo v. INS, 510 F.Supp.2d 210 (S.D.N.Y. July 10, 2007), the issue before the court

was construction of a different statutory provision, 8 U.S.C. § 1421(c). In the course of

construing that statute, I made certain statements describing (rather than adopting) the Hovsepian

analysis. Nothing can be read into that dictum that binds me here.


(2) Legislative history, scheme and purpose support concurrent jurisdiction analysis

The Ninth and Fourth Circuits were also convinced that Congress' intent to speed up the

naturalization process would be best served if CIS were divested of jurisdiction over a petition

once a § 1447(b) complaint is filed. In fact, the result reached by those courts would almost

inevitably slow the naturalization process down, in direct contravention of Congress' will.

The legislative history of the Immigration Act of 1990 indicates that Congress wanted to

speed the naturalization process along. Prior to the passage of the Act, naturalization was a two-

tiered process that involved both the agency and the district courts. See Chan v. Gartner, 464

F.3d 289, 290 (2d Cir. 2006). Applicants for naturalization applied directly to the district courts,

which had exclusive jurisdiction to decide the applications. Id. The INS would investigate the

applicant and supply the court with a report and non-binding recommendations. See 8 C.F.R. §

335.11 (1990).

---

[4] Instructing the agency to rule in the petitioner's favor – which is the alternative relief sought by
Bustamante in this action – makes little sense; if the district court wanted to dictate that result, it
could simply decide the matter on the merits itself.

In response to the backlogs this system caused in the district courts and the resulting

delays, the Immigration Act of 1990, 104 Stat. 4978, 5038-48 (Nov. 29 1990), specifically

divested the district courts of their jurisdiction over naturalization actions and placed "sole

authority to naturalize persons as citizens of the United States [with] the Attorney General." 8

U.S.C. § 1421(a); see also Chan, 464 F.3d at 290; Farah, 2006 WL 1116526, at *2 (noting effect

of 1990 amendments); Perry, 472 F.Supp.2d at 628 ("After all, CIS is 'the agency primarily

charged by Congress to implement the public policy underlying the [naturalization] laws.'")

(quoting INS v. Miranda, 459 U.S. 14, 19 (1982)); Etape, 497 F.3d at 392 (Hamilton, J.,

dissenting) (emphasizing the overarching congressional intent to "change[] the naturalization

process from judicial one to an administrative one…."); see generally, Arnold Rochvarg,

*Reforming the administrative naturalization process: Reducing delays while increasing fairness,*

9 Geo. Immigr. L. J. 397 (1995) (discussing in detail post-1991 naturalization process). But

while reducing the role of district courts in the naturalization process, Congress did not eliminate

that court entirely. As explained above, if an application for naturalization was denied by the

agency, and the denial was affirmed after internal agency review, the applicant was given a right

to a *de novo* judicial determination. 8 U.S.C. § 1421(c). And if the agency did not act within

120 days of the alien's initial examination, the applicant could bring the matter to court –

though he could not compel the court to act on the petition. 8 U.S.C. § 1447(b).

Congress' wisdom in adding § 1447(b) to the Act is amply illustrated by considering

what actually happens when a § 1447(b) action is filed. It has been this court's uniform

experience that the filing of a § 1447(b) action prods CIS into making a decision. Every such

action that has been filed in my court—until this one—had ended in a voluntary discontinuance,

because once the action was filed, the agency ruled on the naturalization petition. If CIS granted

10

the petition there was no need for additional action in either the agency or the court; if it denied

the petition, the applicant proceeded to the next step in the administrative process, knowing that

he retained the right to judicial review if he lost before the Immigration Judge. In many of these

cases, CIS had acted by the time the court can hold a Rule 16 conference, which is generally 60

or so days after the filing of the action.  Plaintiff's lawyers have freely admitted to this court that

they file § 1447(b) cases in order to get the agency off the dime. They well know that they are

unlikely to end up litigating the merits of the petition before a district judge in the first instance,

because the statute permits the judge to decline to exercise jurisdiction.  If the filing of the

lawsuit automatically divested the agency of jurisdiction, such speedy resolutions would become

impossible.

In Hovsepian, the court argues that under a concurrent jurisdiction regime, an applicant

who has not received a decision within 120 days will file a complaint in the district court, only to

have that complaint mooted by a subsequent agency denial. Id. at 1163-64.  The applicant will

then be forced to seek agency review, and only after being denied again will he be able to

present his application to the district court de novo pursuant to § 1421(c). Id.  The court suggests

that it would be far more economical to recognize exclusive jurisdiction in the district court after

the commencement of the § 1447(b) action. Id. at 1164.

There are two problems with the Ninth Circuit's "cut to the chase" argument. First, it

assumes that all (or most, or many) delayed naturalization applications will be denied. See Perry,

472 F. Supp. 2d at 629 (acknowledging this problem).  This assumption has neither been alleged

by Bustamante nor proven in any of the reported decisions.  If it is not true, then granting the

district court exclusive jurisdiction will slow the process in every case where the delayed

application would be granted by CIS.

But the bigger problem with the Ninth Circuit's "cut to the chase" argument is that it assumes that district courts will actually decide § 1447(b) cases on the merits. If that were true, then expedition might be best served by ousting the agency of jurisdiction the minute such a case was filed. But in the real world, that is not likely to happen. Rather, a busy district court, faced with an unconstrained and unreviewable choice between (i) adding a hearing on a petition for naturalization to a crowded docket, or (ii) sending the matter back to CIS for an initial decision, will almost always choose the latter option. That is certainly what THIS district court's predilection would be.

Since there is no way to force a district judge to determine the merits of a petition in a § 1447(b) action, while the specter of a remand with instructions to issue a ruling within thirty days hanging over its head gives CIS has every incentive to turn its attention to the delayed application that is the subject of a lawsuit, concurrent jurisdiction is speedier than exclusive jurisdiction. A ruling that divested CIS of jurisdiction as soon as the applicant filed a § 1447(b) action would, in the real world, delay the processing of the application, thereby frustrating Congress' intent.

(3) Brock

Finally, a reading of § 1447(b) that avoids stripping the agency of jurisdiction is also more in harmony with the Supreme Court's decision in Brock v. Pierce County, 457 U.S. 253 (1986), which advocates employing "less drastic remedies" than stripping an agency of jurisdiction for its failure to act promptly:

> We would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake. When, as here, there are less drastic remedies available for

12

failure to meet a statutory deadline, courts should not assume that Congress intended the agency to lose its power to act.

Id. at 260.

In Brock, a county sought review of a decision of the Secretary of Labor requiring repayment of funds unlawfully expended. Section 106(b) of the Comprehensive Employment and Training Act (CETA), 29 U.S.C. § 816(b), provides that the Secretary "shall" issue a final determination as to the misuse of CETA funds by a grant recipient within 120 days after receiving a complaint alleging such misuse. In the case of a complaint lodged against Pierce County, Washington, the Secretary did not make such a final determination until after the 120 day period had expired. The County argued that the agency was divested of the power to order repayment of misused money if it failed to act within the 120 day period.

The Supreme Court – relying heavily on Judge Friendly's opinion for the Second Circuit in St. Regis Mohawk Tribe, New York, v. Brock, 769 F. 2d 37 (2d Cir. 1985) – ruled that Government agencies do not lose jurisdiction if they fail to act within statutory time limits unless the statute "both expressly requires an agency or public official to act within a particular time period and specifies a consequence for failure to comply with the provision." Brock, supra., 476 U.S. at 259 (citing St. Regis).

Plaintiff's reliance on Brock is not persuasive in the naturalization context, because nothing in the 1990 Act requires CIS to act on a naturalization petition within 120 days, or any other specified period of time. In Hovsepian, the Ninth Circuit construed § 1447(b) to "require[]" CIS to make a decision on an application within 120 days, and to "specif[y] a consequence" for failing to do so, 359 F.3d at 1161. But § 1447(b) – unlike §816(b) of CETA – does not contain any mandatory language. Compare 8 U.S.C. §§ 1446-47 (nowhere stating that a

13

decision "shall" or "must" follow within 120 days), with the statute at issue in Brock, 29 U.S.C. § 816(b) (1976 ed., Supp. V) (repealed) (stating that the secretary "shall" issue a final determination within a certain amount of time). And § 1447(b) does not "specify a consequence" in the sense that is required to divest CIS of jurisdiction over a naturalization petition. Nothing happens automatically if CIS fails to act within the 120 day window. The petitioner may, if he wishes, commence an action in the district court, but he is not required to do so. And if he does file a lawsuit, the district court is not required to adjudicate the matter on the merits. All that §1447(b) does is give petitioner an alternative forum for an initial decision, as long as both he and the district court wish to take advantage of that alternative.  It does not take the matter away from the agency and vest the decision exclusively in the court.

In the end, the Supreme Court in Brock refused to conclude that Congress meant to strip an agency of jurisdiction absent statutory language that clearly and unequivocally dictated such a result. There is no such clear or unequivocal language in § 1447(b). Therefore, a finding of concurrent jurisdiction is more in keeping with the Supreme Court's decision in Brock than is a decision vesting exclusive jurisdiction in the district court for whatever period the court chooses to keep the case.

Conclusion

For the foregoing reasons, the instant action is dismissed as moot.[5] The Clerk is directed to close the file.

---

[5] Rather than exercise his right to take an administrative appeal – thereby insuring that he would someday have the right to a de novo hearing on his petition for naturalization – plaintiff put all his eggs in the Hovsepian basket, and failed to exhaust his administrative remedies. As a result, dismissal here works a harsh result. But this court is not of a mind to let bad facts make bad law. If petitioner has lost his right to a hearing in the district court, it is because of his own action (or, more properly, inaction) following CIS's determination of his petition.

This constitutes the decision and order of the Court.

Dated: January 29, 2008

_____
U.S.D.J.

BY ECF TO ALL COUNSEL